IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROHALEY AND SON AUTOMOTIVE, INC., | ) ) | Case No. 1:20-cv-2700 |
| | ) | |
| Plaintiff, | ) ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) ) | MAGISTRATE JUDGE THOMAS M. PARKER |
| | ) | |
| TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, | ) ) ) | **REPORT AND** **RECOMMENDATION**[1] |
| | ) | |
| Defendant. | | |

Defendant Travelers Casualty Insurance Company of America ("Travelers") has filed a
motion (ECF Doc. 18) seeking either (i) dismissal of plaintiff Rohaley and Son Automotive,
Inc.'s ("RSA") complaint as a discovery sanction or, alternatively, (ii) an order compelling
Rohaley to respond to Travelers's discovery requests.  The current motion is an extension of the
parties' previous discovery dispute concerning RSA's failure to comply with the court's
discovery deadlines or respond to Traveler's discovery requests, upon which the court issued a
series of final deadlines.  Travelers asserts that although RSA met the deadlines for furnishing
something in response to the previously omitted discovery, the substance of RSA's disclosures
and responses is inadequate and fails to comply with the spirit of court's order or the plaintiff's
obligations under the Federal Rules of Civil Procedure.

---

[1] This matter is before me pursuant to the Court's order of referral for preparation of a report and
recommendation on Travelers Casualty Insurance Company of America's motion to dismiss.  ECF Doc.
22.

The undersigned ordered the parties to meet and confer to make a good faith effort to resolve the discovery dispute among themselves, which was unsuccessful.  The undersigned then held a status conference to address the matter, at which RSA requested an opportunity to amend its disclosures and discovery responses and Travelers maintained its position that dismiss was warranted in light of the continued discovery delays.

I recommend that Travelers's motion to dismiss be GRANTED and that RSA's complaint be DISMISSED.

## I.    Factual Background[2]

RSA was an automobile repair business located in Mentor, Ohio, that opened for business in January 2014.  ECF Doc. 1 at 1; ECF Doc. 1-1 at 11, 54.  Chad M. Leonard Holdings, Inc. ("CMLH") provided the initial capital to start up the company, Chad M. Leonard was RSA's sole shareholder, and Albert Charles Rohaley, II was a trusted employee.  ECF Doc. 1 at 1; ECF Doc. 1-1 at 1.  Travelers had issued to RSA a commercial general liability, "claims made" policy that covered RSA's business property between December 16, 2015 and December 16, 2016. ECF Doc. 1 at 2.

In early 2015, the relationship between Leonard and Rohaley began to deteriorate, culminating with Rohaley locking Leonard out of RSA in September 2015 and Leonard

---

[2] The factual background is drawn from RSA's complaint and materials appended thereto.  ECF Doc. 1; ECF Doc. 1-1; see Fed. R. Civ. P. 10(c).  These include: (i) a notarized letter from RSA to Travelers on August 17, 2017 requesting reconsideration of the denial of coverage; (ii) before-and-after photographs of missing property; (iii) a December 23, 2016 opinion and judgment entry from the Lake County Court of Common Pleas, Case No. 15CV001937; (iv) transcript excerpts from Albert Charles Rohaley, II's bankruptcy proceedings; (v) transcript excerpts from Case No. 15CV001937; (vi) witness sign-in sheets; (vii) a list of persons; (viii) a worksheet reflecting amounts paid between January 27, 2014 and October 24, 2016;(ix) images of checks paid dated between January 27, 2014 and October 24, 2016; (x) a worksheet of equipment with purchase dates and costs of replacement; (xi) emails between Chad M. Leonard and Lawrence A. Bodnar dated December 15, 2016 over cancellation of an insurance policy; (xii) Traveler's March 14, 2018 response to RSA's request for reconsideration.  See ECF Doc. 1-1 at 1, 6-57.

obtaining a preliminary injunction against Rohaley on May 24, 2016.  ECF Doc. 1-1 at 2, 11.  In October 2016, Rohaley started a new business across the street called Rohaley's Auto & Truck Repair LLC, employing the same technicians who had worked at RSA.  ECF Doc. 1-1 at 12.  On January 5, 2017, Leonard regained access to RSA and discovered that several pieces of equipment, parts (inventory), and tools were missing.  ECF Doc. 1-1 at 2.

On May 24, 2017, RSA submitted a claim for loss of equipment, tools, vehicles, and lost profits that occurred during the policy coverage period.  ECF Doc. 1 at 2.  On July 24, 2017, Travelers denied coverage because the policy excluded coverage for loss or damage caused by an act or decision by co-owner, partner, member, officer, manager, or employee of RSA or person to whom RSA was entrusted.  *See* ECF Doc. 1 at 2; ECF Doc. 1-1 at 1, 55-56.  On August 17, 2017, Leonard filed on behalf of RSA a request for review of the denial of coverage, explaining that Rohaley was not a stockholder, partner, or manager of RSA on October 28, 2016.  ECF Doc. 1 at 2; ECF Doc. 1-1 at 1.

On March 14, 2018, Travelers denied Leonard's request.  ECF Doc. 1 at 2; ECF Doc. 1-1 at 53.  Travelers stated that some of the material Leonard submitted with his request referred to Rohaley as a co-owner of RSA after October 28, 2016 and RSA's corporate documents referred to Rohaley as an incorporator, director, president, treasurer, and statutory agent.  ECF Doc. 1-1 at 53.  Travelers further stated that: (i) the policy did not cover losses if the property had been vacant for more than 60 days; and (ii) Leonard failed to comply with the policy's notice provision, as he discovered the loss on January 7, 2017 but did not report it until May 24, 2017.  ECF Doc. 1-1 at 56.

## II.    Procedural History

On November 7, 2018, RSA, Leonard, and CMLH filed a complaint in the Lake County, Ohio, Court of Common Pleas against Travelers.  Case No. 1:18-cv-02825, Doc. 1-3.  On December 7, 2018, Travelers removed the case to federal court based on diversity jurisdiction. *Id.*, Doc. 1.

On March 13, 2019, RSA filed an amended complaint, excluding Leonard and CMLH as plaintiffs.  *Id.*, Doc. 9.  The amended complaint generally asserted claims of breach of breach of contract and bad faith arising out of Travelers's denial of RSA's insurance claim for stolen equipment, tools, and vehicles and for lost profits.  *Id.*, Doc. 9 at 2-10.  On April 23, 2019, Travelers's filed its answer.  *Id.*, Doc. 10.  And on July 3, 2019, RSA filed its initial disclosures. *Id.*, Doc. 12.

On August 7, 2019, the parties jointly indicated that paper discovery had been substantially completed, depositions were in the process of being scheduled, and mediation was being contemplated.  *Id.*, Doc. 13.  However, on September 17, 2019, RSA's attorney moved to withdraw, and not all the scheduled depositions were conducted.  *See id.*, Doc. 14, Doc. 15, Doc. 16, Doc. 17, Doc. 20.  The court granted RSA's counsel's motion to withdraw and, after an extension, granted RSA until December 2, 2019 to obtain new counsel, warning RSA that failure to do so would result in dismissal for want of prosecution.  *Id.*, Doc. 18, Doc. 23.  On December 3, 2019, with no counsel having entered an appearance, the court dismissed RSA's complaint without prejudice for want of prosecution.  *Id.*, Doc. 25.

On December 3, 2020, RSA, with new counsel, filed the instant action against Travelers by and through CMLH, asserting a claim for breach of contract and a claim of bad faith arising out of Traveler's denial of coverage.  ECF Doc. 1.  As relief, RSA seeks a declaration of the

4

parties' rights under the contract, compensatory damages, attorney fees, and exemplary damages. ECF Doc. 1 at 3-4.

On March 8, 2021, the court issued an order to show cause why the case should not be dismissed for failure to serve Travelers with process.  Docket Entry dated 3/08/2021.  RSA filed a response, stating that its attorney, Peter Traska, had been hindered by: (i) a death in the family; (ii) his four school-aged children, who were attending school from home due to Covid-19; and (iii) the fact that he was only one of two attorneys at his firm.  ECF Doc. 3.  The court granted RSA additional time to perfect service, which was completed on April 13, 2021.  Docket Entry dated 3/17/2021; ECF Doc. 5.

On May 19, 2021, the court scheduled a case management conference for June 21, 2021. ECF Doc. 9.  The court's order indicated that initial disclosures were due within ten days after the parties' planning meeting.  ECF Doc. 9 at 2.  The court also required that RSA provide Travelers a written demand of damages no later than one week before the first status conference. Id.

On June 1, 2021, Travelers filed its answer to the complaint.  ECF Doc. 10.  On June 16, 2021, Travelers filed a report of planning meeting, stating that it had forwarded a proposed report to RSA on June 11, 2021 but did not receive a response.  ECF Doc. 11 at 1.  The proposed report required that initial disclosures be exchanged by July 1, 2021.  Id.  On June 21, 2021, the court held a case management conference, at which it established the discovery cut-off date as November 19, 2021.  Docket Entry dated 6/21/2021.

On July 23, 2021, Travelers served upon RSA interrogatories and requests for admission. ECF Doc. 13 at 3; ECF Doc. 14 at 2.  On November 15, 2021, Travelers filed a notice of discovery dispute and supporting affidavit, informing the court that RSA had not furnished

Travelers with a damage demand, initial disclosures, responses to interrogatories, or responses to requests for admission.  ECF Doc. 13; ECF Doc. 14.  The discovery dispute was referred to the undersigned and a telephone conference on the discovery dispute was held on November 29, 2021.  ECF Doc. 15; Docket Entry dated 11/29/2021.

At the November 29, 2021 telephone conference, Traska stated that several personal circumstances inhibited his ability to meet his client's discovery obligations: his sister-in-law had been diagnosed with cancer in June 2021; his wife, who was also his law partner, underwent surgery; and he had a "major court event."  ECF Doc. 16 at 2.  Upon agreement of the parties, the court ordered that: (i) RSA provide Travelers with its damage demand letter and initial disclosures by December 3, 2021; (ii) RSA provide Travelers with answers to its interrogatories and requests for production by December 10, 2021; and (iii) Travelers could immediately move for sanctions if RSA failed to meet either deadline.  ECF Doc. 16 at 3; Docket Entry dated 11/30/2021.

On December 10, 2021, RSA filed a notice indicating that it had furnished the requested discovery.  ECF Doc. 17.  On December 29, 2021, Travelers wrote to RSA, indicating that some of RSA's responses to interrogatories and requests for production were inadequate or incomplete.  ECF Doc. 18-7.  Specifically, Travelers contested RSA's responses to the following interrogatories:

> 2.  Please **identify** the name **and** address of **each person** having knowledge or discoverable information relevant to **Your** claim for damages caused by **or** resulting from the **Loss and**, with respect to **each person** identified, indicate the subject matter of which the witness has knowledge.
>
> **<u>ANSWER:  OBJECTION,</u> calls for duplication of demands already satisfied by the Plaintiff during the claims adjustment process, and is therefore unduly burdensome.  Without waiving, Plaintiff states that all persons previously identified by Chad M. Leonard during the claims process are the responsive persons to this question.**

3. Please **identify each and every** item of **Business Personal Property** that **Plaintiff** claims sustained direct physical loss of **and/or** damage to that was caused by the **Loss** and for **each** item of **Business Personal Property** please the following:

    a. The date the item sustained direct physical loss **or** damage;
    b. The age of [*sic.*] item, its actual cash value **and** replacement cost value;
    c. The amount spent to replace **or** repair the lost **or** damaged **Business Personal Property; and**
    d. Please **identify each person** who will support the basis of **Your** claimed loss **and/or** damages to **Business Personal Property**, as well as a brief synopsis of their expected testimony at the time of trial.

**ANSWER: OBJECTION, calls for duplication of demands already satisfied by the Plaintiff during the claims adjustment process, and is therefore unduly burdensome. Without waiving, Plaintiff itemized all missing tools, parts, and equipment and provided its replacement cost value on or about August 17, 2017. See Travelers "Claim Doc. BS for production 09.11.2019," pp. 000085-000134. All of these losses occurred subsequent to the "before" date identified by the Plaintiff in said correspondence, October 26, 2016. The source documents for every line on these proof of loss forms were already shared with Travelers in 2017 via google drive. Plaintiff has long believed that the missing tools, parts and equipment was [*sic.*] relocated to Rohaley Auto and Truck Repair, LLC, directly across the street from the insured premises. Travelers did not, however, investigate that possibility.**

… 5. Please state the amount of **Business Income You** sustained due to the **Suspension** of **Your Operations** at the **Property** during the **Period of Restoration** and please sate:

    a. Please provide a detailed description of how the claimed **Business Income** loss was calculated;
    b. Please **identify each person** with knowledge of **any** fact **relating to Your** calculation of the claimed **Business Income** loss; **and**
    c. Please **identify** with specificity **all documents You** rely on in support of **Your** calculation of the claimed **Business Income** loss.

**ANSWER: Two Hundred thousand dollars per year is a reasonable estimate of what the business was actually profiting in 2016 and on a "going forward" basis. This projection can be derived from the profit and loss and other statements forwarded with these responses. Note, however, that these documents also show the many ways in which … Rohaley diverted money improperly out of the company. I am happy to explain in detail, as I did during the claims process.**

6.   Please state the amount of **Extra Expense You** incurred during the **Period of Restoration** to avoid or minimize the **Suspension** of **Your** business to continue **Operations** at the **Property or** at a replacement premises **or** temporary location and please state:

   a.   Please provide a detailed description of how the claimed **Extra Expense** was calculated;
   b.   Please **identify each person** with knowledge of **any fact relating to Your** calculation of the claimed **Extra Expense; and**
   c.   Please **identify** with specificity **all documents You** rely on in support of **Your** calculation of the claimed **Extra Expense**.

**ANSWER:  Please refer to the "extra expense" document provided with these responses.  Note: there is no cost of labor because I recruited friends who volunteered.  That makes the food expenses necessary.**

… 8.   With respect to **Your** claim for exemplary damages, please state the amount of the claimed for exemplary damages and please state:

   a.   Please provide a detailed description of how the claimed damage amount was calculated;
   b.   Please **identify each person** with knowledge of **any** fact **relating to Your** calculation of the claimed damage amount; **and**
   c.   Please **identify** with specificity **all documents You** rely on in support of **Your** calculation of the claimed damage amount.

**ANSWER:  OBJECTION, calls for work product/attorney's theory of the case.  Without waiving, Plaintiff's final determination as to the amount of exemplary damages to request of a jury would not be made until trial.**

ECF Doc. 18-5 at 2-6; *see* ECF Doc. 18-7 at 2-3.

Travelers claimed that these responses were inadequate because: (i) Travelers was left to guess who RSA referred to as persons identified by Leonard during the claim process; (ii) Travelers was left to guess what documents and witnesses support RSA's business personal property claim; (iii) RSA did not provide any details as to how it calculated the business income loss; (iv) the "extra expense" document produced by RSA did not describe what was purchased or why, provide receipts, or identify persons with knowledge; and (v) RSA's response to the description of exemplary damages was evasive and Travelers was entitled to know the amount of

8

damages sought and identification of material relied upon to reach that figure.  ECF Doc. 18-7 at 2-3.

Travelers also contested RSA's responses to the following requests for production of documents:

1.   Please produce **all documents** that were reviewed or relied upon in answering **Travelers'** First Set of Interrogatories to Plaintiff.

**RESPONSE: Please refer to claims documents already in Travelers's possession.**

2.   Please produce **all documents related to** the replacement **or** repair of **Business Personal Property** identified in **Your** answer to Interrogatory 3 that **You** claim sustained direct physical loss of **or** damage to that was caused by the **Loss**.

**RESPONSE: Please refer to claims documents already in Travelers's possession.**

… 6.    Please produce **all documents related to** the calculation of **Your** normal operation expenses incurred by Operations at the Property during the Period of Restoration.

**RESPONSE: Please refer to claims documents already in Travelers's possession and produced herewith.**

7.   Please produce **all documents You** used **and/or** relied on in the calculation of the actual cash value of **Your Business Personal Property** that sustained direct physical loss of **and/or** damage to that was caused by the **Loss**.

**RESPONSE: Please refer to claims documents already in Travelers's possession and produced herewith.**

8.   Please produce **all documents You** used **and/or** relied on in the calculation of the replacement cost value of **Your Business Personal Property** that sustained direct physical loss of **and/or** damage to that was caused by the **Loss**.

**RESPONSE: Please refer to claims documents in Travelers's possession and produced herewith.**

… 13.  Please produce all statements of witnesses or any other individuals concerning the event giving rise to this lawsuit, whether the statement is written, audiotape **or** videotape.

**RESPONSE: Please refer to claims documents already in Travelers's possession and produced herewith, including the document file named "landlord letter."**

… 15.  Please produce **all** books of original entry for **Plaintiff** for 2016 through the present, including, but not limited to:

    a.  General ledgers, balance sheet **and** working trial balances;
    b.  Accounts payable;
    c.  Accounts receivable;
    d.  Depreciation schedules; **and**
    e.  Payroll journals detailed by employee **and** by pay period.

<u>**RESPONSE:**</u> **Please refer to claims documents already in Travelers's possession and produced herewith.**

… 18.  Please produce **all documents You** used **and/or** relied on in the calculation of the value of **Plaintiff's Operations** at the **Property and/or** at a replacement premises **or** temporary location from November 1, 2016 to present.

<u>**RESPONSE:**</u> **Please refer to claims documents already in Travelers's possession and produced herewith**.

… 21.  Please produce **all documents You** used **and/or** relied on to support the allegation in paragraph 18 of the **Complaint** that "Plaintiff has complied with all conditions precedent to Travelers's obligations to provide coverage for the Plaintiff's losses."

<u>**RESPONSE:**</u> **Please refer to claims documents already in Travelers's possession**.

22. Please produce **all documents You** used **and/or** relied on to support the allegation in paragraph 25 of the **Complaint** that "Travelers's breaches of duty failed to meet Ohio's requirement of good faith, and rise to the level of the tort of bad faith."

<u>**RESPONSE:**</u> **Please refer to claims documents already in Travelers's possession.**

23. Please produce **all documents You** used **and/or** relied on to support the allegation in paragraph 26 a. of the **Complaint** that Travelers failed or refused "to timely evaluate and adjust the Plaintiff's claims."

<u>**RESPONSE:**</u> **Please refer to claims documents already in Travelers's possession.**

24. Please produce **all documents You** used **and/or** relied on to support the allegation in paragraph 26 b. of the **Complaint** that Travelers asserted "claims defenses with basis in fact, or in a manner inconsistent with Ohio law."

**RESPONSE:** **Please refer to claims documents already in Travelers's possession.**

25. Please produce **all documents You** used **and/or** relied on to support the allegation in paragraph 26 c. of the **Complaint** that Travelers failed or refused "outright to address some portion; (sic) of the Plaintiff's claims."

**RESPONSE:** **Please refer to claims documents already in Travelers's possession.**

26. Please [*sic.*] **all documents** that **Plaintiff** may **or** will use as exhibits **and/or** evidence at trial of this lawsuit, including, but not limited to **photographs**, maps, drawings, diagrams, **documents**, reports, books, treatises, videos, **or any** other tangible things.

**RESPONSE: OBJECTION, premature, or invades into attorney work product as to final determinations; will supplement consistent with trial order.  Without waiving, please refer to claims documents already in Travelers's possession.**

ECF Doc. 18-6 at 2-7.  Travelers contended that RSA's responses to the requests for production left Travelers with no way of knowing what documents RSA was relying on that may have been produced during the claim process.  ECF Doc. 18-7 at 3-4.

Travelers did not obtain a response from RSA concerning the alleged deficiencies in RSA's responses.  *See* ECF Doc. 18 at 3.  On January 31, 2022, Travelers filed its current motion to dismiss/compel, generally contending that RSA's initial disclosures and responses to interrogatories and requests for production were evasive, non-responsive, and so incomplete as to constitute a violation of the court's November 30, 2021 and warrant involuntary dismissal of the case or an order compelling proper discovery responses.[3]  ECF Doc. 18 at 2-3.

---

[3] The arguments set forth in Travelers's motion, RSA's opposition, and Travelers's reply will be discussed more fully below.

In addition to its letter to Traska and RSA's answers to interrogatories and requests for production, Travelers attached RSA's initial disclosures.  ECF Doc. 18-4.  In RSA's initial disclosures, RSA stated that: (i) there were no additional persons likely to have information other than those named during the claim process; (ii) all supporting documentation had been submitted through the claim handling process; and (iii) RSA's "special damage calculation" was shown in an attached table.  ECF Doc. 18-4 at 2.  The attached table listed amounts claimed for: (i) missing tools, parts, and equipment; (ii) missing money; (iii) loss of business income; (iv) "Extra Expense"; (v) accounts receivable; and (vi) attorney fees.  ECF Doc. 18-4 at 3.

On March 1, 2022, RSA filed an opposition, arguing that personal and professional circumstances inhibited counsel's ability to timely respond to the letter sent by Travelers, that Travelers already had in its possession the relevant discovery, and that RSA's written demand letter isolated the relevant portions of the claim file already in Travelers's possession.  ECF Doc. 19.  On March 14, 2022, Travelers filed a reply.  ECF Doc. 20.  And on March 28, 2022, the Court referred Travelers's motion to dismiss to the undersigned for a report and recommendation.  ECF Doc. 22.

After an unsuccessful effort by the parties to resolve the matter without court intervention, the court held a telephone conference on the motion to dismiss on April 27, 2022. During the conference, Travelers stated that RSA's references to documents "already in Travelers's possession" or "documents produced in the claim process" were inadequate because Travelers does not know which documents RSA contends are already in Travelers's possession or that were already produced which are responsive to its production requests.  And Travelers stated that the claim file lacked the source documents upon which RSA claimed losses of tools, parts, and equipment and calculated its claimed expenses and business loss.  Travelers concluded

that dismissal was the only appropriate sanction at this juncture in light of RSA's continued discovery delays.

RSA stated during the telephone conference that it now recognized that the written demand letter was no substitute for what was required in the initial disclosures or for what was requested in the interrogatories and requests for production of documents.  RSA stated that the information contained in the claim file was derived from 10,000 pages of documents contained in a Google Drive, certain portions of which RSA recently learned were inaccessible to Travelers.  RSA requested additional time to amend its discovery production.

Both parties indicated that they had not thought to discuss whether to stipulate to the use of any of the discovery produced in the prior case in this matter.

## III.   Motion to Dismiss

Travelers argues that RSA's initial disclosures and discovery responses do not sufficiently comply with the court's November 30, 2021 order, reiterating its arguments in the letter to RSA.  ECF Doc. 18 at 19, 22-25.  Travelers argues that dismissal as a sanction is warranted because, first, RSA had demonstrated a pattern of willful noncompliance with the court's orders by failing to: (i) timely serve Travelers with process; (ii) arrange to meet to prepare, prepare, or file a joint report of planning meeting; (iii) provide Travelers with a written damages demand by July 1, 2021; (iv) provide timely responses to interrogatories or requests for admissions; and (v) comply with the spirit of the court's November 30, 2021 order.  ECF Doc. 18 at 18-20.  Travelers argues that it has been prejudiced by RSA's conduct because it has wasted time, money, and effort to get RSA to cooperate discovery and, despite the case being filed in December 2020, Travelers still has no information of RSA's witnesses or damage calculation or documents upon which RSA will rely.  ECF Doc. 18 at 20.  Travelers argues that

RSA was on notice that failure to comply could result in sanctions, including involuntary dismissal. ECF Doc. 18 at 20-21. And Travelers argues RSA's pattern of disobedience could not be adequately addressed by a lesser sanction. ECF Doc. 18 at 21.

RSA responds that it was unable to respond to Travelers's letter because Traska's wife was diagnosed with an aggressive form of cancer on December 15, 2021, she began chemotherapy on January 17, 2022, and their practice and family responsibilities have all shifted onto him. ECF Doc. 19 at 1, 4-5. RSA argues that Travelers has in its position a claim file 698 pages long that was produced in Case No. 1:18-cv-02825 that documented RSA's position as to why Travelers's should have covered its claim, who were the relevant "actors," and hundreds of pages documenting the losses. ECF Doc. 19 at 2-3. RSA argues that its demand letter explained RSA's basis for liability, named the adjusters relevant to the case, and cited to the pages in the claim file giving rise to the lawsuit. ECF Doc. 19 at 2, 4. RSA argues that Travelers cannot pretend to be unaware of the evidentiary basis of the lawsuit. ECF Doc. 19 at 4-5.

Travelers replies that the reasons given by RSA do not explain its failure to contact Travelers or seek an extension from the court. ECF Doc. 20 at 1-2. Travelers argues that RSA's demand letter is not relevant to the issue of RSA's failure to provide adequate initial disclosures or responses to discovery and is not an adequate substitute. ECF Doc. 20 at 2. It argues that making a generic reference to the claim file does not comply with the requirements of Federal Rule of Civil Procedure 26. *Id*.

### A. Discovery Violation

I agree with Travelers that although RSA complied in some fashion with the court's November 30, 2021 order, the substance of RSA's initial disclosures and responses to discovery were so inadequate as to violate the spirit of the order. As part of its initial disclosures, RSA was

required to disclose: (i) the identity of witnesses known to have discoverable information upon whom RSA intended to rely; (ii) a copy or description of all documents, electronically stored information, and tangible things in RSA's position that it might use to support its claims; and (iii) a computation of damages.  Fed. R. Civ. P. 26(a)(1)(A).  RSA provided a computation of damages, that much is not in dispute.  ECF Doc. 18 at 19; ECF Doc. 18-5 at 2-3.  But RSA did not identify any person or furnish or describe any documents upon which it intended to rely. ECF Doc. 18-5 at 2.  RSA's references to what information was submitted during the claim handling process is not an adequate substitute because its answer did not specify what was produced during the claim process that satisfies the requirements of Rule 26(a)(1).  *See TBC-JP-LR, JV v. Allied Prop. & Cas. Ins. Co.*, No. 4:17-CV-131, 2018 U.S. Dist. LEXIS 235608, at *3 (N.D. Tex. Sept. 10, 2018) (finding that plaintiff's initial disclosure, "any individuals and entities designated by the Defendant in its initial disclosures," comported neither with the letter or spirit of Rule 26(a)(1)).

RSA's responses to several of Travelers's interrogatories were also deficient.  Travelers's Interrogatory No. 2 asked for RSA to effectively comply with its obligation under Rule 26(a)(1)(A)(i).  ECF Doc. 18-5 at 2.  RSA's objection that an answer would be unduly burdensome is, therefore, inappropriate.  RSA's reference to persons identified in the claim process is inadequate because it shifts the burden on Travelers to review all the persons identified in the claim process (persons who might not even be relevant to this case) and RSA's answer does not define the subject matter of which the persons that Leonard might have identified have knowledge.  *See Dancy v. Scribner*, No. 1:07-cv-00716, 2009 U.S. Dist. LEXIS 105170, at *5 (E.D. Cal. Oct. 26, 2009) ("Plaintiff may not provide vague information or direct Defendants to comb through his exhibits to answer their own interrogatories").  Put simply, that

15

RSA may have provided information to Travelers in the claim adjustment process does not

absolve RSA of its obligation under the Federal Rules of Civil Procedure.

      RSA's response to Interrogatory No. 5 failed to identify persons with knowledge of

RSA's calculation of business income loss or provide a calculation of how RSA reached the

$200,000 figure.  ECF Doc. 18-5 at 4.  RSA could refer Travelers to business records for

Travelers to derive the calculation, but only if the burden would be substantially the same for

both parties.  Fed. R. Civ. P. 33(d)(1).  And given that RSA is the party asserting the claim for

business income loss, it would seem to be a lesser burden for RSA to explain its calculation

instead of simply referring Travelers to documents for Travelers to figure it out on its own.  *See*

*also Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 304 (D. Kan. 1996) ("Under the

guise of Fed. R. Civ. P. 33(d) defendants may not simply refer generically to past or future

production of documents.  They must identify in their answers which documents contain the

answer.  Otherwise they must completely answer the interrogatories without referring to the

documents.").

      According to Travelers, the document RSA produced in response to Interrogatory No. 6

listed categories of expenses, which would be partly responsive, but it did not identify persons

with knowledge, or the documents relied upon to support the calculation.  ECF Doc. 18-5 at 5.

RSA does not dispute Travelers's description of the document to support RSA's calculation of

extra expenses.  RSA's answer to Interrogatory No. 6 is, therefore, incomplete.

      RSA's response to Interrogatory No. 8 is also incomplete.  Interrogatory No. 8 asked

RSA to state the amount of compensatory damages sought, how that figure was calculated,

persons with knowledge relevant to that calculation, and documents relied upon to reach that

figure.  Travelers "is entitled to discovery of its adversary's or measure of damages, its

calculations under that theory, and expert opinions on the subject of damages." *Marvin Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588, 593 (D. Minn. 1986). Even if RSA does not yet have all the facts necessary to calculate the amount of compensatory damages sought, RSA "is required to disclose damage computations based on the information available to [it]." *Thomas v. Wash. Univ.*, No. 4:15-cv-01131, 2016 U.S. Dist. LEXIS 14852, at *4-5 (E.D. Mo. Feb. 8, 2016). RSA's answers to the contested interrogatories are incomplete or nonresponsive, such that they can be treated as a failure to answer an interrogatory and a failure to abide by the spirit of the Court's first deadline. *See* Fed. R. Civ. P. 37(a)(1)(C).

And RSA's responses to Travelers's requests for production of documents failed to comply with the requirements of the Federal Rules of Civil Procedure. Under Rule 34, a party may either furnish the requested document, make it available for inspection, or object to the request. Fed. R. Civ. P. 34(b)(2)(B). Each of RSA's contested responses merely referred Travelers to "claims documents already in Travelers's possession." ECF Doc. 18-6 at 2-7. That is not a proper response under Rule 34. Without identifying what documents are responsive to Travelers's request, Travelers has no way to verify that it has in its possession the documents upon RSA will rely. *Williams v. Nationwide Ins. Co.*, No. 12-13904, 2012 U.S. Dist. LEXIS 198638, at *4-5 (E.D. Mich. Dec. 6, 2012); *Williams v. Waddell & Reed Inv.*, No. 04-2561, 2005 U.S. Dist. LEXIS 64400, at *9 (D. Kan. Sept. 19, 2005). In RSA's defense, several of Travelers's requests failed to describe the documents sought with the degree of particularity required by Rule 34, begetting an overly broad response. Fed. R. Civ. P. 34(b)(1). But RSA did not object to Travelers's requests on that basis and Travelers's technical overbreadth did not justify an inadequate response on all of Travelers's requests for production.

17

The court ordered RSA to provide initial disclosures and responses to Travelers's interrogatories and requests for production.  RSA technically complied with that mandate but did so in such a way that the court may treat it as not having complied at all.  *See* Fed. R. Civ. P. 37(a)(1)(C).  I therefore find that RSA in violation of the court's November 30, 2021 order.

### B.    Appropriate Sanction

Federal Rule of Civil Procedure 37(b) permits courts to impose sanctions if a party fails to obey a discovery order.  Fed. R. Civ. P. 37(b)(2), (d)(1)(2).  Rule 41(b) likewise authorizes the defendant to move for involuntarily dismissal based on plaintiff's failure to comply with a court order.  Fed. R. Civ. P. 41(b).  Authorized sanctions include dismissal of the action in whole or in part.  Fed. R. Civ. P. 37(b)(2)(v).  Dismissal is warranted when the record demonstrates "delay or contumacious conduct."  *Norris v. MK Holdings, Inc.*, 734 F. App'x 950, 958 (6th Cir. 2018) (quotation marks omitted).  And in determining the appropriateness of dismissal as a sanction, courts consider:

(1) Whether the party's failure is due to willfulness, bad faith, or fault.

(2) Whether the adversary was prejudiced by the dismissed party's conduct.

(3) Whether the party in violation of the court's order was warned that failure to cooperate could lead to dismissal.

(4) Whether less drastic sanctions were imposed or considered.

*Id.*

I find that the relevant factors weigh in favor of dismissal as an appropriate sanction. The first factor is met because RSA's conduct evinces at least "a reckless disregard for the effect of [its] conduct on [these] proceedings."  *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (alterations added; quotation marks omitted).  RSA delayed service of process for four months after filing its complaint, doing so only after being threatened with involuntary

18

dismissal.  ECF Doc. 1; ECF Doc. 3; ECF Doc. 5; Dkt. Entry dated 3/08/2021.  RSA did not

respond to Travelers's proposed report of planning meeting.  ECF Doc. 11 at 1.  RSA failed to

comply with any of the discovery deadlines, including: (1) the June 14, 2021 for the written

demand letter (ECF Doc. 9 at 2); (2) the July 1, 2021 deadline for initial disclosures (ECF Doc.

9 at 2; ECF Doc. 11 at 1); and (3) the August 23, 2021 deadline for responses to the first set of

interrogatories and requests for production of documents (ECF Doc. 13 at 3; ECF Doc. 14 at 2).

RSA failed to produce these discovery items after repeated requests by Travelers, resulting in

the matter being brought to the court in November 2021.  ECF Doc. 13; ECF Doc. 14.  And

despite having had months to prepare its initial disclosures and responses to Travelers's

discovery requests, what RSA produced in response to the November 30, 2021 order, as

discussed above, was wanting.

      The undersigned is sympathetic to the difficult personal circumstances RSA's counsel

has had to face and the professional burdens he has had to assume as a consequence.  But as the

court has already stated, "the personal hardships he describes can reasonably be expected to

impair an attorney's ability to meet certain deadlines, but they do not explain or justify months of

silence when he could have come to the court to seek extensions."  ECF Doc. 16 at 2-3.  RSA's

failure to respond to Travelers's letter highlighting the deficiencies in discovery or seek an

extension from the court for over 30 days shows that counsel's pattern of inaction continues.

Counsel is reminded that he has a duty to be diligent despite "personal inconvenience" and to act

"with commitment and dedication to the interests of the client."  Ohio Prof. Cond. Rule 1.3,

Comment 1; see also id., Comment 3 ("Delay and neglect are inconsistent with a lawyer's duty

of diligence, undermine public confidence, and may prejudice a client's cause.").

RSA's belief that Travelers already has in its possession everything it needs is understandable but incorrect. As recently came to light at the telephone status conference, the parties have not discussed whether the discovery produced in the prior lawsuit is available for use in the current lawsuit. Among the previously produced discovery were 10,000 pages of documents in a Google Drive from which the claim file was prepared and portions of which RSA only recently learned are inaccessible. It is not clear, then, whether Travelers has in its possession everything RSA contends it does. Putting that aside, RSA has an obligation under the Federal Rules of Civil Procedure to identify the information which support its claims and to do so with greater specificity than simply "look at the claims file" or "look at what was disclosed during the claims handling process." *See Neale v. Coloplast Corp.*, No. 1:18-cv-00274, 2020 U.S. Dist. LEXIS 222505, at *15 (E.D. Tenn. Nov. 2, 2020) ("A "document dump" … does not comply with a party's discovery obligations."); *see also T.N. Taube Corp. v. Marine Midland Mortg. Corp.*, 136 F.R.D. 449, 455 (W.D. N.C. 1991). ("[D]irecting the opposing party to an undifferentiated mass of records is not a suitable response to a legitimate request for discovery." (quotation mars omitted)). RSA's conduct in this case, at minimum, shows a reckless disregard for the effect of its inaction on these proceedings. *See Wu*, 420 F.3d at 643.

Travelers has been prejudiced by RSA's failure to cooperate with discovery. This case has been pending for over a year and the parties still have not conducted any meaningful discovery. Travelers has been forced to come to the court twice in order to force RSA to comply with its discovery obligations. And this is now the second time Travelers has been sued by RSA over the same insurance claim, only for RSA to delay prosecution of its own case. *See Harmon v. CSX Trans.*, 110 F.3d 364, 368 (6th Cir. 1997) (holding that defendant was prejudiced by

being required "to waste time, money, and effort in pursuit of cooperation which [plaintiff] was legally obligated to provide").

RSA was put on notice that failure to comply with the court's November 30, 2021 could result in dismissal as a sanction.  ECF Doc. 16 at 3; Dkt. Entry dated 11/30/2021.  The undersigned has also considered lesser sanctions but finds that dismissal is the more appropriate.  RSA's repeated failure to move the case along, cooperate with discovery, and comply with the court's discovery deadlines and RSA's lack of any explanation for its seeming inability to communicate with Travelers or the court have resulted in over a year of wasted time and effort.  *See Norris*, 734 F. App'x at 959.  RSA's conduct after being warned of dismissal as a sanction shows no improvement.

Because all four factors have been met, the undersigned recommends dismissal as an appropriate sanction to address RSA's conduct in this case.

## IV.   Recommendation

I recommend that Travelers's motion to dismiss (ECF Doc. 18) be GRANTED and that RSA's complaint (ECF Doc. 1) be DISMISSED.

During the 14-day period that RSA has to object to this report and recommendation, RSA may attempt to cure its violation of the court's November 30, 2021 order by furnishing Travelers with initial disclosures, responses to interrogatories, and responses to its request for production that remedy the deficiencies noted above and comply with the Federal Rules of Civil Procedure.  If RSA does so, and certifies the same to the Court, the Court may refer the matter back to the undersigned to determine whether RSA's new discovery complies with its discovery obligations and, if it does, whether a lesser sanction is appropriate.  RSA is advised that any supplemental

discovery must, at a minimum, provide specific Bates-number references to where in the claim file or which of the 10,000 pages of supporting documents are responsive to Travelers's requests.

Dated: April 29, 2022

Thomas M. Parker
United States Magistrate Judge

---

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, \*6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).