IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROHALEY AND SON AUTOMOTIVE, INC., | ) | Case No. 1:20-cv-2700 |
| | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| TRAVELERS CASUALTY | ) | |
| INSURANCE COMPANY OF | ) | **ORDER AND SUPPLEMENTAL** |
| AMERICA, | ) | **REPORT AND RECOMMENDATION** |

Defendant.

Pending before the court is a discovery dispute stemming from plaintiff's, Rohaley and Son Automotive, Inc. ("RSA"), failure to participate in discovery.  The court issued a series of final deadlines for RSA to comply with its discovery obligations, by which time RSA furnished overdue initial disclosures and discovery responses.  However, defendant, Travelers Casualty Insurance Company of America ("Travelers"), filed a motion (ECF Doc. 18) arguing that the quality of RSA's discovery disclosures and responses was so inadequate as to violate the spirit of the court's order.  As relief, Travelers sought either: (i) dismissal of RSA's complaint, or (ii) an order compelling RSA to supplement Travelers's discovery requests.

On April 29, 2022, the undersigned found RSA in violation of the court's order and recommended dismissal of RSA's complaint as the only appropriate sanction.  ECF Doc. 26. However, the report and recommendation ("R&R") gave RSA one last chance to cure its discovery deficiencies in the 14-day period within which to file objections.

RSA has attempted to cure.  ECF Doc. 34; ECF Doc. 33.  But Travelers maintains that many of the deficiencies identified in the R&R remain.  ECF Doc. 29.  Upon review, I find that RSA's new discovery responses substantially comply with its discovery obligations.  Although deficiencies remain, the more appropriate sanction is to compel RSA to supplement its most recent discovery production and award Travelers the costs it incurred to litigate the motion to compel.

Accordingly, the R&R (ECF Doc. 26) is VACATED IN PART as to the recommendation that Travelers's motion to dismiss be granted.  Travelers's motion (ECF Doc. 18) is GRANTED IN PART as to its request that RSA be compelled to supplement its discovery responses.  The court ORDERS that RSA pay, subject to court approval of the amount, the reasonable expenses and attorney fees Travelers incurred to pursue its motion to compel.  Travelers is ORDERED to submit within 14 days of this order a statement of costs itemizing the same; and RSA is ORDERED to file any response within 5 days thereafter.  And I recommend that Travelers's motion (ECF Doc. 18) be DENIED IN PART to the extent it requests dismissal of the action.

## I.     Relevant Background[1]

On November 15, 2021, Travelers filed a notice of discovery dispute and affidavit, stating that RSA had not furnished Travelers with a damage demand letter, initial disclosures, responses to interrogatories, or responses to requests for admission.  ECF Doc. 13; ECF Doc. 14.  On November 29, 2021, the court held a telephone conference on the discovery dispute.  ECF Doc. 15; Docket Entry dated 11/29/2021.  Upon agreement of the parties, the court ordered that: (i) RSA provide Travelers with its damage demand letter and initial disclosures by December 3,

---

[1] The factual background of the claims asserted by RSA in its complaint and the procedural history leading up to the R&R can be found in ECF Doc. 26 at 2-13.  For present purposes, only an abbreviated summary of the procedural history is provided.

2021; (ii) RSA provide Travelers with answers to its interrogatories and requests for production by December 10, 2021; and (iii) Travelers could immediately move for sanctions if RSA failed to meet either deadline.  ECF Doc. 16 at 3; Docket Entry dated 11/30/2021.  On December 10, 2021, RSA filed a notice indicating that it had furnished the requested discovery.  ECF Doc. 17.

On December 29, 2021, Travelers wrote RSA, contesting: (i) RSA's responses to Interrogatory Nos. 2–3, 5–6, and 8; and (ii) RSA's responses to Request for Production Nos. 1, 2, 6–8, 13, 15, 18, and 21–26.  ECF Doc. 18-7 at 2–7.  Receiving no response from RSA, Travelers filed on January 31, 2022 its current motion to dismiss/compel, which additionally challenged RSA's initial disclosures.  ECF Doc. 18 at 2–3.  On March 1, 2022, RSA filed an opposition, to which Travelers replied.  ECF Doc. 19; ECF Doc. 20.  On March 28, 2022, the Court referred Travelers's motion to dismiss to the undersigned for an R&R.  ECF Doc. 22.  And on April 27, 2022, the court held a status conference on the motion to dismiss.  Docket Entry dated 4/27/2022.

On April 29, 2022, I issued an R&R identifying various deficiencies in RSA's initial disclosures, responses to interrogatories, and responses to requests for production, which violated the court's November 30, 2021 order.  ECF Doc. 26 at 14–18.  The R&R further recommended that the only appropriate sanction to address RSA's repeated failure to prosecute its case, cooperate with discovery, and comply with the court's discovery deadlines and RSA's lack of any explanation for its inability to communicate with Travelers or the court.  ECF Doc. 26 at 18–21.  Thus, the R&R recommended that Travelers's motion be granted, and that RSA's complaint be dismissed.  ECF Doc. 26 at 21.

However, the R&R stated that RSA could attempt to cure its violation of the court's November 30, 2021 order with supplemental initial disclosures, responses to interrogatories, and

responses to requests for production that remedied the deficiencies identified in the R&R.  ECF Doc. 26 at 21.  The R&R specifically instructed that "any supplemental discovery must, at a minimum, provide specific Bates-number references to where in the claim file or which of the 10,000 pages of supporting documents are responsive to Travelers's requests."  ECF Doc. 26 at 21–22.  Upon certification of having done so, the R&R stated that the Court could re-refer the matter back to me to "determine whether RSA's new discovery complies with its discovery obligations and, if it does, whether a lesser sanction is appropriate."  ECF Doc. 26 at 21.

On May 13, 2022, RSA filed objections to the R&R, in which it certified that it furnished Travelers with supplemental initial disclosures, responses to interrogatories, and responses to requests for admission.  ECF Doc. 34; *see* ECF Doc. 27.  On July 18, 2022, the court ordered Travelers to file a response to RSA's objections or explain why it wouldn't, the failure of which could be sanctioned by denial of its motion to dismiss.  Docket Entry dated 7/18/2022.

On July 19, 2022, Travelers filed a response to RSA's objections, in which Travelers: (i) conceded that RSA had cured the deficiency in Interrogatory No. 3; (ii) did not dispute RSA's amended responses to Interrogatory No. 3 and Request for Production 6, 7, 13, and 18; and (iii) newly challenged RSA's amended responses to Request for Production Nos. 16, 17, and 20. *See* ECF Doc. 29 at 2–6.  On July 29, 2022, RSA filed a reply to Travelers's response.  ECF Doc. 33; *see* ECF Doc. 31.

On August 2, 2022, the Court referred the pending discovery dispute back to me to address the sufficiency of RSA's supplemental discovery and whether a lesser sanction is warranted.  ECF Doc. 32.

II.     **Adequacy of RSA's Supplemental Discovery**

   A.     **Undisputed Discovery Responses**

Travelers has not challenged RSA's supplemental responses to Interrogatory No. 3 or

Request for Production Nos. 6, 7, 13, and 18.  *See generally* ECF Doc. 29.  Thus, it appears that

the discovery dispute has been resolved as to RSA's response to those discovery requests.

Nevertheless, a review of RSA's responses to these discovery requests confirms that RSA has

adequately complied with its obligations under the Federal Rules of Civil Procedure.  *See* ECF

Doc. 29-2 at 3–4 (interrogatories); ECF Doc. 29-3 at 3–6 (requests for production).

   B.     **Previously Uncontested Discovery Responses**

Travelers argues that RSA's revised responses to Request for Production Nos. 16, 17, and

20 have not corrected the deficiencies identified in the R&R.  ECF Doc. 29 at 5.  But the R&R

did not identify any deficiencies in RSA's responses to those requests for production.  *See*

*generally* ECF Doc. 26.  The reason why is because Travelers did not advise the court that it

contested RSA's responses to Request for Production Nos. 16, 17, and 20.  *See generally* ECF

Doc. 18; ECF Doc. 18-7.  Travelers cannot raise a new objection to those discovery responses as

a basis upon which to seek sanctions at this late stage in the discovery dispute.  *See Bennett v.*

*Bascom*, 788 F. App'x 318, 323–24 (6th Cir. 2019); *see also Murr v. United States*, 200 F.3d

895, 902 n. 1 (6th Cir. 2000).

Nevertheless, I find RSA's responses to Request for Production Nos. 16 and 17

consistent with its obligations under the Federal Rules of Civil Procedure.  Request for

Production Nos. 16 and 17 asked RSA to produce: (i) a copy of RSA's monthly profit and loss

statements from 2016 through the present; and (ii) documents upon which RSA relied to

calculate the value of its operations expenses from 2014 to October 31, 2016.  ECF Doc. 29-3 at

6.  RSA answered that responsive documents were enclosed, which is different from the deficiency identified in the R&R: answers which merely referred Travelers to a 10,000-page claims file for Travelers to search through for an answer.  ECF Doc. 26 at 18.  Travelers has not asserted that no such documents were enclosed.

RSA's response to Request for Production No. 20, however, is deficient.  Request for Production No. 20 asked RSA to produce all documents relied upon for its allegation that "Travelers's denial of Plaintiff's claim is inconsistent with the policy terms, and constitutes a breach of the policy terms."  ECF Doc. 29-3 at 6 (internal quotation marks omitted).  RSA responded by referring Travelers to the claims file, which was the very sort of response the R&R found improper.  ECF Doc. 26 at 18; ECF Doc. 29-3 at 6.  Travelers is entitled to know which documents within the claims file RSA contends contain facts showing that Travelers breached the policy agreement.

### C.    Disputed Discovery Responses

#### 1.    Interrogatories

##### a.    Interrogatory No. 2

Interrogatory No. 2 asked RSA to identify (name and address) of persons with knowledge or discoverable information and to specify the subject matter of which they have knowledge.  ECF Doc. 18-5 at 2.  In his original response, RSA objected to the interrogatory as unduly burdensome and referred to persons "identified by Chad M. Leonard during the claims process." Id.  The R&R found the request not to be unduly burdensome because furnishing the identity of persons with information was a basic obligation under Federal Rule of Civil Procedure 26(a)(1)(A)(i).  ECF Doc. 26 at 15.  The R&R further found that RSA improperly shifted the

burden to Travelers to review all persons in the claims file, some of which might not be relevant

to the case, and failed to define the subject matter of which the persons had knowledge.  *Id.*

In its revised response, RSA stated:

> **Elizabeth Hornsby (See Travelers Claims Doc. BS 9.11.2019 "TRAV", 00004-00006, explaining why the employee/officer theft exclusion does not apply); SIU Investigator Michelle Kloss (TRAV. 00008, and to explain why she did not investigate the business location of Rohaley Auto and Truck Repair, LLC); Stephen Brasheer (TRAV 00007-11, and throughout the Travelers claims file, for his role in denying the claim without reference to policy language); James Wodka, in Travelers "Theft" department (TRAV 00002, 3, 6, and throughout the claims file); See also GDriveBS 000001-2, as previously provided in the claims file.**

ECF Doc. 29-2 at 2-3.

Travelers argues that RSA's revised response to Interrogatory No. 2 remains deficient in

that it makes a vague reference to the claims file without a Bates-number reference, and because

GDriveBS 000001-2 lists 12 names without stating the subject matter of which they may have

knowledge.  ECF Doc. 29 at 2.  RSA disagrees, arguing that Bates numbers were provided for

each named employee and that the GDriveBS document accurately identifies the subject matter

of which the persons have knowledge.  ECF Doc. 33 at 2.

RSA's amended response to Interrogatory No. 2 is only partially compliant with the

R&R.  RSA complied by citing Bates numbers to where in the claims file the information

provided could be ascertained.  But the claims file consists of 10,000 pages.  ECF Doc. 26 at 13.

By citing Bates numbers and then saying, "throughout the Travelers claims file," RSA again

shifts the burden on Travelers to comb through 10,000 pages to find the relevant information.

The lack of Bates-number references would not, on its own, render RSA's revised

response to Interrogatory No. 2 deficient.  The deficiency lies in the fact that RSA has not

provided addresses for the persons named in its response.  *See* ECF Doc. 29-2 at 2–3; *see* Fed. R.

Civ. P. 26(a)(1)(A)(i).  And the GDriveBS pages RSA cited in its response failed to specify the subject matter of which persons listed have knowledge.  The document instead identifies the relationship of the persons named: (i) "former employee;"; (ii) "Al's Wife;" (iii) "Assisted with incorporating the company;" (iv) "Company Accountant;" (v) "Assigned Bailiff for overseeing inventory;" (vi) "Albert's Personal Attorney;" (vii) "Landlord;" (viii) "Landlord Attorney;" (ix) "Insurance Agent/Traveler's [*sic.*] Representative;" (x) "Bank Official;" (xi) "former employee;" and (xii) "former employee's wife."  ECF Doc. 33-1 at 1-2.  Although RSA might think identifying their relationship sufficient to convey the subject matter of which these persons might have knowledge, that belief is incorrect.  *See* Fed. R. Civ. P. 26(a)(1)(A)(i).  Thus, RSA has not cured the deficiency in its response to Interrogatory No. 2.

> **b.      Interrogatory No. 5**

Interrogatory No. 5 asked RSA to state the amount of business income loss RSA sustained due to a suspension of operations during the "**Period of Restoration**," with: (i) a description of how the business income loss was calculated; (ii) the identity of each person with knowledge of a fact related to how the calculation was made; and (iii) all documents relied upon in making the calculation.  ECF Doc. 18-5 at 4.  RSA answered:

> **Two Hundred thousand dollars per year is a reasonable estimate of what the business was actually profiting in 2016 and on a "going forward" basis.  This projection can be derived from the profit and loss and other statements forwarded with these responses.  Note, however, that these documents also show the many ways in which … Rohaley diverted money improperly out of the company.  I am happy to explain in detail, as I did during the claims process.**

ECF Doc. 18-5 at 4.  The R&R found that response deficient because RSA failed to identify persons with knowledge of how it reached the $200,000 figure.  ECF Doc. 26 at 16.  The R&R

also found that RSA was required to explain its calculation instead of referring Travelers to

documents for it to figure it out on its own. *Id.*

In its revised response, RSA repeated its original answer verbatim, except that it added:

"**See also "Loss of Business Income" Amended answer no. 3, above.**" ECF Doc. 29-2 at 5.  In

its revised answer to Interrogatory No. 3, RSA elaborated on its business income loss

calculation:

> Loss of Business Income.  Estimate of $200,000.00 per year is based on Mitchells profit and loss documents.  These statements account for all sales and expenditures on parts itemized by customer.  All of the source documents are separately Bates numbered with "Mitchells" as the identifier.  They total 1813 pages.  Mitchells is an integrated Point of Sales system, so this is the most complete set of documents available to identify all of the corporation's transactions.  The Mitchells system integrates payroll, parts, sales, and other routine expenses.  Only rent, insurance payment, and utilities are expenses outside of Mitchells.
>
> The profit and loss statements (001589-1813) show the average gross income by month and by year.  Mr. Leonard estimates the loss of income with reference to this data in cross reference with the bank statements.
>
> By comparing the bank records to all of the Mitchells profits and loss statements, and factoring in checks the Rohaleys wrote to themselves, purchases of vehicles that the business could not purchase and resell legally, and items purchased with no relationship to the business, Mr. Leonard calculated that $15,0000 [*sic.*] to $20,000 was the monthly profit.

ECF Doc. 29-2 at 3–4.

Travelers argues that RSA's revised answer to Interrogatory No. 5 is unclear because

RSA referred to "other statements" in addition to the profit and loss statements contained in the

"Mitchells" documents.  ECF Doc. 29 at 3.  Travelers also notes that (with the exception of 33

pages) Mitchells001357-1568 were duplicates of Mitchells001569-1813.  *Id.*  RSA responds that

its answer to Interrogatory No. 3 fully answers Interrogatory No. 5 and that the duplicates

Travelers cited were not among those RSA referenced in its response Interrogatory No. 3.  ECF Doc. 33 at 4–5.

RSA's revised response to Interrogatory No. 3, as incorporated by reference in Interrogatory No. 5, cured the deficiencies noted in the R&R.  Travelers has not disputed the quality of RSA's explanation of how it reached the $200,000 figure.  *See generally* ECF Doc. 29. And RSA's response to Interrogatory No. 3 identified a person with knowledge (Chad M. Leonard) and the documents upon which Leonard relied to calculate the business income loss. Travelers's confusion as to what "other statements" refers is understandable, but the revised answer to Interrogatory No. 3 makes it sufficiently clear that Leonard cross-referenced profit/loss statements with "bank statements" to calculate the business income loss figure, both of which were among the Mitchells-numbered documents cited.  And RSA is correct that the duplicate Mitchells-numbered page were not among those relied upon to answer Interrogatory No. 3. Thus, RSA has cured the deficiency in its response to Interrogatory No. 5.

### c.    Interrogatory No. 6

Interrogatory No. 6 asked RSA to state the amount of extra expenses it incurred to continue operations during the period of restoration, along with: (i) a description of how that figure was calculated; (ii) the identity of persons with knowledge of any fact related to the calculation of that figure; and (iii) the documents relied upon to calculate that figure.  ECF Doc. 18-5 at 5.  RSA's initial response was: "**Please refer to the "extra expense" document provided with these responses.  Note: there is no cost of labor because I recruited friends who volunteered.  That makes the food expenses necessary.**" *Id.*  The R&R found that response deficient because the document, as described by Travelers, did not identify persons with knowledge or the documents relied upon to support the calculation.  ECF Doc. 26 at 16.

10

In its revised answer to Interrogatory No. 6, RSA repeated its previous answer verbatim, except that it added: "**See GDrive000028-29.  By far, the largest expenses were for the shipping containers in which Mr. Leonard stores the materials left behind when the Rohaleys vacated.**" ECF Doc. 29-2 at 6.

Travelers objects to RSA's revised response to Interrogatory No. 6 because the newly cited document was the same extra expense chart the R&R determined to be deficient. ECF Doc. 29 at 3.  RSA disagrees and has filed the expense chart with the court. ECF Doc. 33 at 5; ECF Doc. 33-2.  The expense chart is a table listing items purchased for clean-up and relocation between April 11 and May 8, 2017, totaling $40,690.47. ECF Doc. 33-2 at 1–2.

RSA's revised response to Interrogatory No. 6 remains deficient.  As the R&R previously observed: "the document RSA produced in response to Interrogatory No. 6 listed categories of expenses, which would be partly responsive, but it did not identify persons with knowledge, or the documents relied upon to support the calculation." ECF Doc. 26 at 16.  That remains to be the case.

RSA argues that it provided along with the expense chart a statement by Leonard stating that he is the only person with direct knowledge of "all matters inquired of" and that RSA did not have "papers showing the purchase money for … shipping containers," which represented $30,000 of the extra expenses. ECF Doc. 33 at 5; ECF Doc. 33-2 at 2.  Those statements have not been included in its revised answer to Interrogatory No. 6.  And even if they had been, they would not have addressed the issue of what documents Leonard relied upon to calculate the $40,000 RSA claims as extra expenses.  *See* ECF Doc. 29-1 at 3.  If RSA was unable to provide documents substantiating the categories of expenses listed in the expense chart or an answer to that portion of the interrogatory, a corporate representative for RSA was required to say so under

11

oath. *See Roden v. Floyd*, No. 2:16-cv-11208, 2019 U.S. Dist. LEXIS 37444, at *8-9 (E.D. Mich. Mar. 8, 2019). Thus, RSA has not cured the deficiency in its response to Interrogatory No. 6.

### d. Interrogatory No. 8

Interrogatory No. 8 asked RSA to: (i) state the amount it claimed for "exemplary damages;" (ii) state how that figure was calculated; (iii) identify each person with knowledge of any fact relating to RSA's calculation; and (iv) identify the documents relied upon to calculate exemplary damages. ECF Doc. 18-5 at 6. RSA initially objected to the interrogatory as calling for "work product/attorney's theory of the case" and stated that the amount would be determined at trial. *Id.* The R&R found that answer deficient in light of caselaw requiring plaintiffs to disclose their damage computations based on the information available. ECF Doc. 26 at 16–17.

In its revised response to Interrogatory No. 8, RSA reiterated its previous answer verbatim. ECF Doc. 29-2 at 6–7. It added, however, a hypothetical of how it would attempt to establish that figure at trial:

> **For example, Counsel would ask the jury that was tasked with evaluating Plaintiff's evidence and Defendant's claims handling what multiple of the proved losses would be necessary to deter Travelers from conduct like denying the claim without reference to policy language, or by requiring "damage" when the policy says "loss or damage." A jury might return a large multiple, which would then be adjusted downward as required by case law.**

ECF Doc. 29-2 at 7. Travelers objects to the revised answer as non-responsive. ECF Doc. 29 at 3–4. RSA responds that its answer represents all the information it currently has. ECF Doc. 33 at 5.

RSA's revised answer to Interrogatory No. 8 remains deficient. RSA seeks to recover from Travelers "exemplary damages sufficient to deter like conduct in the future." ECF Doc. 1

at 3–4. Exemplary damages, like punitive damages, are designed to punish a tortfeasor for certain conduct. Ohio Rev. Code § 2315.21(C); *Crowe v. Owens Corning Fiberglass*, No. 73206, 1998 Ohio App. LEXIS 5075, at *13 (Ohio Ct. App. Oct. 29, 1998) (unreported). By their very nature, exemplary damages are unliquidated and are, therefore, not susceptible to a "rigid mathematical formula." *Gray v. Allison Div., Gen. Motors Corp.*, 370 N.E.2d 747, 754 (Ohio Ct. App. 1977). But that doesn't mean the information is not discoverable.

RSA's calculation of exemplary damages is not privileged. *See Nicholson v. Biomet, Inc.*, No. 18-CV-3057, 2020 U.S. Dist. LEXIS 110324, at *6 (N.D. Iowa Feb. 14, 2020). And RSA's answer is non-responsive. Under Ohio law, the amount of exemplary damages cannot exceed twice the amount of compensatory damages awarded by the jury. Ohio Rev. Code § 2315.21(D)(2). In light of the statutory cap, one would think it a relatively simple matter for RSA to respond to Interrogatory No. 8 by describing its calculation as the sum total of compensatory damages claimed multiplied by two, per § 2315.21. RSA could have cross-referenced its answers to Interrogatory Nos. 3, 5, and 6 as identifying persons with knowledge to the relevant categories of damages and the documents upon which the underlying damage calculations were based. And RSA could have objected to the identification or production of documents that could provide Travelers with mental impressions of counsel related to exemplary damages. But RSA did none of these things. Thus, RSA has not cured the deficiency in its response to Interrogatory No. 8.

### 2. Requests for Production

The R&R found that the disputed requests for production suffered from the same deficiency: RSA merely referred Travelers to the 10,000-page claims file, without any further specificity. ECF Doc. 26 at 17, 20. To cure the deficiency, the R&R instructed RSA to "provide

13

Bates-number references to where in the claim file or which of the 10,000 pages of supporting documents are responsive to Travelers's requests." ECF Doc. 26 at 21–22.

### a. Request for Production No. 1

Request for Production No. 1 asked RSA to identify the documents upon which it relied to answer Travelers's firs set of interrogatories. ECF Doc. 18-6 at 2. In its revised response, RSA stated:

> **Drop Box link emailed separately. Sub-files included for ease of reference are "BS May 13, 20229 [*sic.*] (four subfiles), GD court docs (eight files from connected litigation, captioned, not Bates stamped), GD Videos (four files), and Tax Returns (years 2014, 2015). Note that these files are a re-arrangement, pagination, and breakdown of documents previously provided multiple times.**

ECF Doc. 29-3 at 2.

Travelers argues that many of the subfiles were missing due to "downloading problems." ECF Doc. 29 at 4. Travelers further states that 1,379 of the 4,297 pages of documents produced were Bates numbered and that none of the documents produced in the previous lawsuit were Bates numbered. *Id.* RSA responds that it previously explained to Travelers that it did not provide Bates number for certain documents because they were better identified by their file names. ECF Doc. 33 at 6-7.

RSA's revised response to Request for Production No. 1 remains deficient. The court was quite explicit on the minimum RSA was required to do if it provided supplemental discovery: Bates-number references. RSA's revised response, although partially compliant with that mandate, nevertheless remains deficient as to the 1,379 files it chose not to Bates number.

Despite the technical omission, RSA has nevertheless complied with its discovery obligations. When it comes electronically stored information, the producing party "must produce

14

it in a form … in which it is ordinarily maintained or in a reasonably usable form." Fed. R. Civ. P. 34(b)(2)(E)(ii).  The documents which were not Bates numbered consist of Excel files labeled by date (*i.e.*, "april 2014, "april 2015," etc.) which RSA states represent customer receipts by month.  ECF Doc. 33 at 6; *see* ECF Doc. 33-3.  Electronically stored information in Excel spreadsheet format is a "reasonably usable format" under Rule 34 because it allows the requesting party the ability to search, sort, and filter through information.  *Thomas-Byass v. Michael Kors Stores (Cal.), Inc.*, No. EDCV 15-00369, 2015 U.S. Dist. LEXIS 94278, at *8–9 (C.D. Cal. July 17, 2015).

Thus, although RSA has not cured the deficiency in its response to Request for Production No. 1, its revised response is consistent with its discovery obligations and does not violate the court's November 30, 2021 order.

### b.        Request for Production No. 2

Request for Production No. 2 asked RSA to produce all documents related to the replacement or repair of the business personal property it identified in Interrogatory No. 3.  ECF Doc. 18-6 at 2.  In its revised response, RSA stated: "**Other than claims documents already in Travelers's possession, Plaintiff cannot point to documents "related to the replacement or repair" of business property because R&S ceased operating as R&S, and began operating as Rohaley and Son Auto Truck Repair, LLC.**" ECF Doc. 29-3 at 2–3.

Travelers argues that argues that RSA's revised response failed to identify the documents allegedly in Travelers's possession with Bates-number references.  ECF Doc. 29 at 4.  RSA responds that it cannot provide a more specific response because "Travelers's denial of the claim kept the Plaintiff from replacing or repairing any of the equipment that would have been necessary to resume operations."  ECF Doc. 33 at 7.

15

RSA's revised response to Request for Production No. 2 puzzling.  Request for Production No. 2 effectively asked RSA to produce the documents it used to answer Interrogatory No. 3.  In answering Interrogatory No. 3, RSA identified by Bates number several files RSA contended were responsive to the identification of items claimed damaged or lost and their replacement/repair cost value.  ECF Doc. 29-2 at 3.  It is unclear on what basis RSA contends that it could not be more specific in answering Request for Production No. 2.  Nevertheless, because RSA's revised response to Interrogatory No. 3 effectively answers Request for Production No. 2, I find the deficiency sufficiently cured.

### c.      Request for Production No. 8

Request for Production No. 8 asked RSA to produce the documents it relied upon to calculate the replacement cost value of the business personal property that sustained a direct physical loss or damage.  ECF Doc. 18-6 at 3.  In its revised response, RSA stated: "**All previously provided spreadsheets are supported by records in the Mitchells system, as well as the checks at GDrive 000032-54.**[]"  ECF Doc. 29-3 at 4.

Travelers argues that RSA's revised response to Request for Production No. 8 failed to identify the previously provided spreadsheets or which Mitchells files are responsive.  ECF Doc. 29 at 4.  RSA responds that Request for Production No. 8 is duplicative of Interrogatory No. 3.  ECF Doc. 33 at 7.

Travelers is correct that RSA's revised response to Request for Production No. 8 failed to comply with the letter of the R&R's instruction that it provide specific Bates-number references to which documents are responsive.  Asserting that certain unspecified spreadsheets are supported by other unspecified records, does not comply with that requirement.  And RSA is incorrect that Request for Production No. 8 is duplicative of Interrogatory No. 3, because

16

Interrogatory No. 3 did not ask that RSA identify the documents upon which it calculated the repair or replacement cost of the lost or damaged business personal property.  ECF Doc. 29-2 at 3.

However, RSA produced documents in its response to Interrogatory No. 3 with Bates-number references to pages within the claims file and GDrive from which it appears that RSA determined the replacement cost of the lost or damaged items.  ECF Doc. 29-2 at 3.  Because RSA's revised response to Interrogatory No. 3 effectively answered Request for Production No. 8, I find the deficiency sufficiently cured.

### d.      Request for Production No. 15

Request for Production No. 15 asked RSA to produce all books of original entry for 2016 through the present, including: (i) general ledgers; (ii) accounts payable; (iii) accounts receivable; (iv) depreciation schedules; and (v) payroll journals detailed by employee and pay period.  ECF Doc. 18-6 at 5.  In its revised response, RSA stated: "**Mitchells POS documents are provided.**"  ECF Doc. 29-3 at 5–6.

Travelers argues that RSA's response is deficient because it failed to provide Bates-number references to which of the 1,813 pages of Mitchells documents were responsive.  ECF Doc. 29 at 4–5.  RSA responds that the point-of-sale record generated by Mitchells "is the book of original entry."  ECF Doc. 33 at 7.

RSA's revised answer to Request for Production No. 15 is incomplete.  On its face, RSA's response is deficient in that it failed to refer by Bates-number reference to the specific Mitchells documents that were responsive.  That deficiency could be overlooked if it were true that the Mitchells documents as a whole were fully responsive to the request for production.  As RSA stated in response to Interrogatory No. 3, the Mitchells documents "integrate[] payroll,

17

parts, sales, and other routine expenses." ECF Doc. 29-2 at 3-4. But RSA stated that it did not

include "rent, insurance payment[s], and utilities." ECF Doc. 29-2 at 4. Those documents were

not identified in RSA's revised answers. Thus, RSA has not completely cured the deficiency in

Request for Production No. 15.

e.        **Request for Production No. 21**

Request for Production No. 21 asked RSA to produce all documents "used **and/or** relied

on" to support RSA's allegation that it complied with all conditions precedent to Travelers's

obligations to provide coverage. ECF Doc. 29-3 at 7. In its revised response, RSA stated:

> **This request is difficult to understand. The Travelers policy contains
> hundreds of pages of terms that are arguably conditions precedent, but the
> question does not specify. However, the duty to cooperate and to furnish
> information were satisfied with the Plaintiff's provisions of information on
> multiple occasions, including to Defense Counsel by email in July of 2019,
> ending with the statement, "I believe we have everything."**

*Id.*

Travelers argues that RSA's revised response to Request for Production No. 21 is

nonresponsive and failed to provide specific Bates-number references to any responsive

documents. ECF Doc. 29 at 5. Travelers argues that the email referenced by RSA is irrelevant

because it concerned being able to download documents produced in their previous lawsuit.

ECF Doc. 29 at 5-6. RSA responds that "Defendant's complaint about RPD 21 omits the fact

that Plaintiffs [*sic.*] specifically addressed the most common conditions precedent at issue, the

duties to cooperate and to furnish information." ECF Doc. 33 at 8.

RSA's revised response to Request for Production No. 21 remains deficient. RSA has

asserted a claim for breach of contract against Travelers, contending that it satisfied all

conditions precedent for coverage. ECF Doc. 1 at 3. Although RSA framed its allegation in

terms of conditions precedent (which is an affirmative defense to a claim of breach of contract),

18

it is more properly read as an allegation that RSA performed its obligations under the insurance contract.  *Wsb Rehab. Servs. v. Cent. Accounting Sys.*, 2022-Ohio-2160, ¶26 (Ohio Ct. App. 2022) ("An unsatisfied condition precedent can excuse performance under a contract and is a defense to a breach-of-contract claim."); *White v. Pitman*, 156 N.E.3d 1026, 1036 (Ohio Ct. App. 2020) ("The elements of a breach-of-contract claim are the existence of a contract, performance by the plaintiff, breach by the defendant, and damages or loss to the defendant." (internal quotation marks omitted)).

Travelers is entitled to know what evidence RSA contends establishes that it performed its obligations under the insurance contract.  If RSA had any doubts as to what specifically would be responsive, it could have used as reference Travelers's answer, which specifies the conditions precedent RSA failed to meet.  ECF Doc. 10 at 7-9, 11.  And if the only conditions precedent RSA believed applicable were its duty to cooperate and furnish information, RSA should have provided Bates-number references to documents that substantiated RSA's claim that they were satisfied "on multiple occasions."  Thus, RSA's has not cured the deficiency in its response to Request for Production No. 21

### f.    Request for Production No. 22-24

Requests for Production 22 through 24 asked:

22. Please produce **all documents You** used **and/or** relied on to support the allegation in paragraph 25 of the **Complaint** that "Travelers's breaches of duty failed to meet Ohio's requirement of good faith, and rise to the level of the tort of bad faith."

\*\*\*

23. Please produce **all documents You** used **and/or** relied on to support the allegation in paragraph 26 a. of the **Complaint** that Travelers failed or refused "to timely evaluate and adjust the Plaintiff's claims."

\*\*\*

24. Please produce **all documents You** used **and/or** relied on to support the allegation in paragraph 26 b. of the **Complaint** that Travelers asserted "claims defenses with basis in fact, or in a manner inconsistent with Ohio law."

ECF Doc. 18-6 at 6–7.

RSA's revised response to each one of these requests for production was: "**Other than the claims documents, the application to Ohio law that supports this paragraph of the Complaint is not contained in documents. Plaintiffs' demand letter explains fully.**" ECF Doc. 29-3 at 7–8. RSA's response to Request for Production No. 24 additionally stated: "**See also response to Interrogatory 8.**" ECF Doc. 29-3 at 8.

Travelers argues that the lack of Bates-number references renders RSA's revised responses to Requests for Production Nos. 22-24 deficient. ECF Doc. 29 at 6. RSA responds that the documents in the claims file generally show acts of bad faith and omissions, but because most of Travelers's alleged misconduct concerned omissions, it was not possible to answer with greater specificity. ECF Doc. 33 at 8.

RSA's responses to Request for Production Nos. 22 through 24 remain deficient. RSA is correct that it was not required to explain the application of Ohio law to the facts of the case, which would be an improper discovery request into a legal conclusion. *See Muff v. Wells Fargo Bank Nat'l Ass'n*, No. 21-cv-4003, 2022 U.S. Dist. LEXIS 45170, at *6 (N.D. Iowa Jan. 27, 2022). But RSA was required to identify which documents in the claims file were responsive to the requests. If there were none, RSA could have said there were none in its response to the requests for production. But instead, RSA referred Travelers to the claims file, which was the very deficiency it was instructed to cure. And RSA's response to Interrogatory No. 8 concerned a question into the computation of exemplary damages; it would not be responsive to a request for production of documents substantiating RSA's contention that Travelers asserted claims

20

during the insurance claim process without a basis in fact or inconsistent with Ohio law.  ECF Doc. 1 at 3; ECF Doc. 29-2 at 7.  Thus, RSA has not cured the deficiencies in its responses to Request for Production Nos. 22, 23, and 24.

### g.  Request for Production No. 25

Request for Production No. 25 asked RSA to: "produce **all documents You** used **and/or** relied on to support the allegation in paragraph 26 c. of the **Complaint** that Travelers failed or refused "outright to address some portion; (sic) of the Plaintiff's claims.'"  ECF Doc. 18-6 at 7. In his revised response, RSA stated: "**Travelers' omissions are, by definition, not present in the claims documents.  However, by comparing the claims documents to the demand letter, Travelers would find the answer to this request.**"  The parties' arguments with respect to Request for Production No. 25 are same as those for Requests for Production Nos. 22-24.  ECF Doc. 29 at 6; ECF Doc. 33 at 8.

RSA's revised response to Request for Production No. 25 remains deficient.  Although RSA argues that omissions are not present in the claims documents, Travelers's alleged "outright" refusals presumably would be.  And RSA statement that a responsive answer could be discerned from the demand letter implies that there are responsive documents which could be cited by a Bates-number reference, but RSA would rather Travelers figure it out on its own. Thus, RSA has not cured the deficiency in its response to Request for Production No. 26.

### h.  Request for Production No. 26

Request for Production No. 26 asked:

> Please [*sic.*] **all documents** that **Plaintiff** may **or** will use as exhibits **and/or** evidence at trial of this lawsuit, including, but not limited to **photographs**, maps, drawings, diagrams, **documents**, reports, books, treatises, videos, **or any** other tangible things.

ECF Doc. 18-6 at 7.  In its revised response, RSA stated: "**Liability evidence is as described in the Travelers claims file, and explained in Plaintiff's demand.  Damages evidence is as described in answers to interrogatories and these requests.**"  ECF Doc. 29-3 at 8.

Travelers argues that RSA's revised response remains deficient because RSA did not provide specific Bates-number references to any documents.  ECF Doc. 29 at 6.  RSA responds that its revised response to Request for Production No. 26 "simply references information already broken down in detail to the Defendant, as no final identification of trial exhibits is appropriate at this time."  ECF Doc. 33 at 8.

RSA's revised response to Request for Production No. 26 has not cured the deficiency noted in the R&R.  RSA's revised answer again refers Travelers to the 10,000-page claim file for Travelers to determine on its own what documents would be responsive to its request.  And, as discussed above, several of RSA's responses to interrogatories and requests for production remain deficient, such that RSA could not simply incorporate those answers by reference.

However, RSA raises a valid argument that discovery into trial exhibits at this stage of the proceedings would be inappropriate.  RSA is already required to produce the discovery Travelers seeks to obtain in Request for Production No. 26 as part of its pretrial disclosures.  *See* Fed. R. Civ. P. 26(a)(2)–(3).  Specifically, RSA is required to disclose at least 30 days before trial: (i) the identity of persons it may call as witnesses; and (ii) an identification of each document it expects to offer into evidence.  Fed. R. Civ. P. 26(a)(3)(A).  No trial date has been set in this matter.  And given the breadth of Travelers's other discovery requests, which already ask for the identity of persons with knowledge and all documents relied upon by RSA to answer the first set of interrogatories and substantiate the allegations in the complaint, there is no reason why Travelers should also have information concerning trial witnesses and exhibits earlier than

contemplated by Rule 26(a)(3). *See Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 42 (D. Md. 2000).

Thus, although RSA has not cured the deficiency in its response to Request for Production No. 26, RSA's revised response does not violate the court's November 30, 2021 order.

### III. Appropriate Sanction

Federal Rule of Civil Procedure 37(b) permits courts to impose sanctions if a party fails to obey a discovery order. Fed. R. Civ. P. 37(b)(2), (d)(1)(2). Rule 41(b) likewise authorizes the defendant to move for involuntarily dismissal based on plaintiff's failure to comply with a court order. Fed. R. Civ. P. 41(b). Authorized sanctions include dismissal of the action in whole or in part. Fed. R. Civ. P. 37(b)(2)(v). Dismissal is warranted when the record demonstrates "delay or contumacious conduct." *Norris v. MK Holdings, Inc.*, 734 F. App'x 950, 958 (6th Cir. 2018) (internal quotation marks omitted). And in determining the appropriateness of dismissal as a sanction, courts consider:

> (1) Whether the party's failure is due to willfulness, bad faith, or fault.
>
> (2) Whether the adversary was prejudiced by the dismissed party's conduct.
>
> (3) Whether the party in violation of the court's order was warned that failure to cooperate could lead to dismissal.
>
> (4) Whether less drastic sanctions were imposed or considered.

*Id.*

I previously determined that the relevant factors weighed in favor of dismissal as an appropriate sanction. ECF Doc. 26 at 18-20. I stated, however, that I would consider whether a lesser sanction was appropriate if RSA's supplemental discovery complied with its discovery obligations. RSA's new discovery responses are in many ways a great improvement from what

it initially furnished to Travelers.  Of the 19 disputed discovery responses found to be deficient RSA has cured 10.  RSA has provided Bates-number references to the majority of the documents in the claims file, which was the primary deficiency in its response to requests for production. And those documents that were not Bates numbered were produced in a manner which complied with RSA's discovery obligations.  Although RSA's discovery responses remain deficient as to nine discovery requests, the R&R's threat of dismissal has had the desired effect of spurring RSA into action and producing long overdue discovery.

That brings us to the matter of whether dismissal remains the only appropriate sanction. RSA appears to argue that it should be allowed to continue prosecuting its case unscathed.  ECF Doc. 33 at 10; ECF Doc. 34 at 3.  Had RSA's supplemental discovery fully resolved all outstanding discovery issues, that argument would have some weight.  But I find the more appropriate alternative to order that: (i) RSA be compelled to supplement its responses to Interrogatory Nos. 2, 6, and 8 and Requests for Production Nos. 15 and 20-25; and (ii) that RSA be required to bear the cost of Travelers's reasonable expenses in filing and litigating the motion to compel.  Fed. R. Civ. P. 37(a)(5), (b)(2)(C).

Before the imposition of costs as a sanction, we must determine whether RSA's noncompliance with the court's orders was "substantially justified" or whether other circumstances would "make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).  The delays in this proceeding were the result of difficult personal circumstances faced by RSA's counsel.  But as I previously stated: "the personal hardships he describes can reasonably be expected to impair an attorney's ability to meet certain deadlines, but they do not explain or justify months of silence when he could have come to the court to seek extensions."  ECF Doc. 16 at 2–3.  Thus, RSA's noncompliance was not substantially justified.  And in light of the

24

significant impact RSA's delays have had on the prosecution of this cause, an award of reasonable expenses would not be unjust.

To determine that actual amount RSA will be required to pay, Travelers must submit a statement of costs incurred to prepare, file, and pursue its motion to compel.  After the statement of costs is filed, RSA shall be afforded five days to respond, and the court would then review the statement of costs for reasonableness and determine the amount RSA will be required to pay.

## IV.    Conclusion and Recommendation

The previous report and recommendation (ECF Doc. 26) is VACATED IN PART with respect to the recommendation that Travelers's motion to dismiss (ECF Doc. 18) be granted and RSA's complain be dismissed.

Travelers's motion (ECF Doc. 18) is GRANTED IN PART with respect to its request that RSA be compelled to supplement its discovery responses.

RSA is ORDERED to supplement its answers to Interrogatories Nos. 2, 6, and 8 and Requests for Production Nos. 15 and 20–25 consistent with this order.

RSA is ORDERED to pay the reasonable expenses and attorney fees incurred by Travelers to pursue its motion to compel.  Travelers is ORDERED to submit to the court a statement of costs itemizing the same within 14 days of this order; and RSA is ORDERED to file any response within 5 days thereafter.

And I recommend that Travelers's motion (ECF Doc. 18) be DENIED IN PART to the extent it requests dismissal of the action.

Dated: August 11, 2022

Thomas M. Parker
United States Magistrate Judge

_____

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, *6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).

26